[Cite as *State v. Leonard*, **2017-Ohio-211.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Maumee          Court of Appeals No. L-15-1269

      Appellee                 Trial Court No. 15-CRB-00047-1

v.

Richard T. Leonard                  **DECISION AND JUDGMENT**

      Appellant                Decided:  January 20, 2017

* * * * *

John B. Arnsby, City of Maumee Prosecutor, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Maumee Municipal Court that

denied appellant's motion for a new trial following appellant's conviction of one count of

making threats of domestic violence in violation of R.C. 2919.26(C). For the reasons that follow, the judgment of the trial court is reversed.

{¶ 2} The undisputed facts relevant to the issues raised on appeal are as follows. Appellant initially appeared before the trial court for arraignment on January 14, 2015. When appellant was asked if he could afford an attorney, he responded, "potentially." At that time, the prosecutor stated that he had looked at appellant's 2014 divorce decree and said appellant may not qualify for a public defender, based on his annual income possibly being "six figures." Without inquiring further of appellant, the trial court stated that the case would be continued for appellant to obtain an attorney.

{¶ 3} Appellant appeared in court with private counsel on February 17 and April 16, 2015. Both times, counsel requested a continuance and additional pre-trials, which were granted. On May 19, 2015, appellant's attorney withdrew. At that time, appellant appeared in court and requested a public defender, saying that he was unable to hire new counsel. Appellant stated, "I can't keep up with what my obligations are now." After a brief inquiry, the trial court assigned a public defender. Appellant filed an affidavit of indigency, file-stamped May 19, 2015, which stated his income as $5,000 per month and monthly expenses of $8,500, including a child support obligation of $4,300 per month.

{¶ 4} On July 2, 2015, the public defender orally moved to withdraw, stating that appellant did not meet the indigency requirements. Counsel also stated that appellant was requesting a jury trial. The trial court stated, "We are not to that point yet." The court

2.

granted the public defender's motion to withdraw and continued the case for appellant to obtain private counsel.

{¶ 5} On July 14, 2015, appellant appeared without counsel. When the court asked appellant if he had retained counsel, the following dialog occurred, which constituted the entire hearing:

JUDGE: All right, sir, you have a new case of driving under suspension, and this was continued on the previous case for you to have a lawyer here. Have you retained counsel?

MR. LEONARD: I don't have the resources, Your Honor.

JUDGE: I don't believe you.

MR. LEONARD: I'm sorry.

JUDGE: You're facing – we have a bond report – have a seat, I want to see what your compliance with the bond is.

* * *

JUDGE: If you don't hire a lawyer, we are proceeding without a lawyer. Case is set for trial August 19 at ten o'clock.

MR. LEONARD: What if I don't have the money? I do not have it. I'm ordered to pay from Judge Zemmelman. I don't know why the court doesn't understand that.

3.

JUDGE: You make too much money to qualify for the public defender's office. When the trial is, if you want to go without a lawyer, that's up to you, I wouldn't do it. Bond [is] continued.

{¶ 6} On August 19, 2015, the trial court commenced proceedings by stating that appellant's request for a jury trial, submitted two days earlier, was denied as untimely. The court then asked, "Are the parties ready to proceed to trial?" Appellant replied, "Your Honor, can I speak please?" The trial court responded, "No, you may not."

{¶ 7} Appellant spoke up anyway, stating he would have to file a complaint with the disciplinary counsel because his public defender had verbally requested a jury trial during the pre-trial on July 2. Appellant stated he did not know that the public defender had not filed a written motion with the request. Appellant then asked for a continuance. The trial court told appellant that if he interrupted again he would be held in contempt and would go to jail.

{¶ 8} Trial proceedings began immediately. The trial court explained the basic trial procedure and asked appellant if he understood. Appellant responded that he did and again asked for a continuance. The trial court again threatened appellant with a finding of contempt if he interrupted one more time. The trial court continued to explain additional details of trial procedure and again asked appellant if he understood. Again, appellant asked for a continuance, stating that he had not received a witness list from the prosecutor. The trial court told appellant that he knew trial was set for that day and reiterated that they would proceed. When appellant asked if he could have a continuance

4.

until that afternoon, the trial court responded that he could not and called for opening statements.

{¶ 9} The prosecution called several witnesses, including appellant's former wife and his two children. Appellant questioned the state's witnesses, appearing to be at a severe disadvantage. When the prosecution rested, appellant said he would "call myself." The trial court permitted appellant to testify without cautioning him of the risk of self-incrimination. When appellant finished his statement, the trial court stated in part: "* * * [Q]uite frankly, sir, you are one of the most abrasive acerbic person[s] that I ha[ve] seen in this court. To be around you is difficult. You interfere with all proceedings, you try to control all proceedings. It is incredibly difficult to be around you."

{¶ 10} The trial court found appellant guilty of domestic violence threats, a misdemeanor of the fourth degree, and continued the matter for sentencing. On September 1, 2015, appellant, through counsel, filed a motion for a new trial, asserting that his Sixth Amendment right to counsel was violated. The state filed a response in opposition to appellant's motion and, at the sentencing hearing on October 9, 2015, brief arguments were permitted on the motion. The state argued that appellant had waived his right to counsel. The trial court stated: "All right, I've considered your arguments. Quite frankly, I find it telling that the retained counsel is now representing the defendant at this stage. I urged him to have retained counsel at the trial, he chose not to do that." Appellant's motion was summarily denied. After statements in mitigation, appellant was sentenced to 30 days in CCNO, 20 days suspended, with a fine of $150 and costs.

5.

{¶ 11} Appellant sets forth the following assignments of error:

Assignment of Error One:

The trial court denied appellant his Sixth Amendment right to counsel.

Assignment of Error Two:

The trial court erred in denying appellant's motion for a new trial on additional evidence he qualified for appointed counsel.

{¶ 12} In his first assignment of error, appellant argues that the trial court violated his Sixth Amendment right to counsel by forcing him to proceed to trial pro se when he did in fact qualify for appointed counsel. Appellant asserts that he submitted an affidavit of indigency on May 19, 2015, which indicated that although he earned $5,000 a month he was paying $4,300 a month for child and spousal support.

{¶ 13} Under the Sixth Amendment, a criminal defendant is entitled to full and fair representation at trial by counsel. *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). When a defendant is unable to secure counsel using private funds, the state has a duty to provide such counsel. *Gideon v. Wainwright*, 372

{¶ 14} U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Crim.R. 44. However, the Sixth Amendment is not applicable to all criminal proceedings. Rather, an indigent defendant is entitled to appointed counsel only in those prosecutions, as in the case before us, in which a term of imprisonment could be imposed. *Argersinger v. Hamlin*, 407 U.S. 25, 37-38, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Garfield Hts. v. Brewer*, 17 Ohio

6.

App.3d 216, 217, 479 N.E.2d 309 (1st Dist.1984); *State v. Kleve*, 2 Ohio App.3d 407, 409, 442 N.E.2d 483 (8th Dist.1981).

{¶ 15} Although the public defender stated on July 2, 2015, that appellant "makes too much money," no evidence contradicting appellant's affidavit of indigency was presented to the trial court and the court failed to inquire of appellant whether he did in fact make "too much money." There is no evidence in the transcripts of the numerous pre-trial hearings and the trial that the trial court at any time conducted a meaningful inquiry as to appellant's financial status. As noted in *State v. Tymcio*, 42 Ohio St.2d 39, 44-45, 325 N.E.2d 556 (1975), "Many factors may impinge upon a defendant's inability to obtain counsel, factors which may differ greatly from case to case. * * * To make the right to the assistance of court-appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so."

{¶ 16} In fact, in denying appellant's request for appointed counsel, the trial court relied upon the public defender's comment that appellant was ineligible for appointed counsel due to his level of income. However, the trial court's conclusion was premature. In order to determine whether a criminal defendant is "unable to obtain counsel" under Crim.R. 44, the trial court must "inquire fully into the circumstances impinging upon the defendant's claimed inability to obtain counsel. When an accused is financially able, in whole or in part, to obtain the assistance of counsel, but is unable to do so for whatever

7.

reason, appointed counsel must be provided." *Tymcio, supra* at 45. *See also Toledo v. Garmon*, 6th Dist. Lucas No. L-12-1206, 2013-Ohio-4413.

{¶ 17} Here, appellant repeatedly requested appointed counsel. Appellant insisted he was unable to independently obtain counsel, despite several attempts to do so, because he did not have sufficient cash for an attorney's retainer. Despite appellant's repeated requests, the record indicates that the trial court failed to "inquire fully" pursuant to *Tymcio* as to the circumstances impacting appellant's ability to retain counsel. The trial court summarily concluded that appellant's income disqualified him from eligibility for appointed counsel without asking him how much he earned and what his monthly expenses were in order to independently determine possible eligibility.

{¶ 18} Therefore, we find that the trial court failed to ensure that appellant was adequately represented by counsel. Accordingly, appellant's first assignment of error is well-taken.

{¶ 19} Based on the foregoing, appellant's second assignment of error as to the denial of his motion for a new trial is moot.

{¶ 20} On consideration whereof, the judgment of the Maumee Municipal Court is reversed and this matter is remanded to that court for further proceedings. Costs of this appeal are assessed to appellee pursuant to App.R. 24.

Judgment reversed.

8.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                            JUDGE

Stephen A. Yarbrough, J.

                                                      _____
James D. Jensen, P.J.                              JUDGE
CONCUR.

                                                      _____
                                                            JUDGE